UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FATIMA SENDEROVIC AND JASMIN AHMETOVIC, INDIVIDUALLY AND FOR ALL OTHERS SIMILARLY SITUATED,<br>    *Plaintiffs*,<br><br>    v.<br><br>CONSUMER LEGAL GROUP PC and ARYEH WEBER<br>    *Defendants*. | No. 3:24-cv-1326 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Fatima Senderovic ("Ms. Senderovic") and Jasmin Ahmetovic ("Mr. Ahmetovic"), individually and on behalf of all other similar situated (collectively, the "Plaintiffs") have sued Consumer Legal Group PC ("CLG") and Aryeh Weber ("Mr. Weber") (collectively, the "Defendants") for claims of (1) making untrue statements regarding the Plaintiffs' credit and charging for debt validation services before performance in violation of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679 *et seq.*; and (2) damaging the Plaintiffs' credit score and causing the Plaintiffs' creditors to file multiple debt collection lawsuits against the Plaintiffs. Compl., ECF No. 1 at 9–12 (Aug. 16, 2024) ("Compl.").

The Defendants have filed a motion to dismiss the Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. Mot. to Dismiss, ECF No. 24 (Nov. 11, 2024) ("Mot.").

For the following reasons, the Complaint is **DISMISSED**, and Defendants' motion to dismiss is **GRANTED**.

Because the Complaint has been dismissed, the Plaintiffs' request for the certification of a class of similarly situated Plaintiffs is **DENIED** as moot.

1

To the extent that the deficiencies in Plaintiff's Complaint can be remedied, Plaintiff may seek leave to file an Amended Complaint by **July 18, 2025**.[1]

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

    A.  **Factual Allegations**[2]

The Plaintiffs allegedly amassed a large amount of consumer debt over $54,800. Compl. at 4.

Ms. Senderovic allegedly called a debt relief company to combine her debts and the company pitched a debt validation program that the Defendants offered and allegedly claimed that all of her debts would be removed from her credit reports. *Id.* at 5.

On or about June 16, and June 20, 2023, Ms. Senderovic and Mr. Ahmetovic, respectfully, allegedly entered into an agreement with the Defendants to:

> -Assist you in stopping creditors and any related debt collectors from harassing or contacting you in connection with any of the debts identified below;
> -Dispute the legal validity of the debts identified below based upon information provided by you;
> -Assist you in addressing erroneous or inaccurate information in connection with debts identified below;
> -Represent you in any lawsuit filed against you in connection with any of these debts;
> -Defend you against any collection activity or lawsuit on any debt identified below at any point in time, without expiration;
> -Initiate legal action in a court of competent jurisdiction against any creditor that violates any state or federal law in connection with any debt identified below; and
> -Determine your qualification for bankruptcy under Chapter 7 or Chapter 13 of the U.S. Bankruptcy Code, and counsel you regarding the procedures and effects of bankruptcy as well as your qualification to file the same.
>
> *Id.* at 5 (citing Services Agreement, ECF No. 24-4 (Nov. 11, 2024) ("Services Agreement")).

---

[1] In the interim, and until the Court has to and does rule on the propriety of any amended pleading, the Court will exercise its inherent authority to manage the expeditions disposition of cases on its docket, *see Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."), and stay discovery in this case.

[2] For purposes of this motion to dismiss, the Court considers the factual allegations from the Complaint to be true.

Under this agreement, the Plaintiffs were allegedly required to: (1) provide the Defendants a list of all their unsecured debts, which they allegedly complied with; (2) Ms. Senderovic was required to make twenty-three (23) payments in the amount of $404.80 beginning on July 21, 2023 and one final payment of $404.72 on June 7, 2024, for a total of $9,715.12; and (3) Mr. Ahmetovic was required to make thirty-two (32) payments in the amount of $287.23 beginning on June 30, 2023 and one final payment of $287.18 on March 30, 2026, for a total of $9,469-54. *Id.* at 6.

Starting in August 2023 and continuing for several months, the Defendants allegedly sent multiple cease and desist letters to the Plaintiffs' creditors regardless of the status of the debt, sometimes with the knowledge that the debts were valid *Id.* at 6–8.

The Defendants allegedly disputed twenty (20) debts with Equifax, Experian and TransUnion in August and September 2023, despite allegedly having knowledge that the debts were valid. *Id.* at 8.

The Plaintiffs allege that, at its essence, the Defendants' activities were attempts to intimidate Plaintiffs' creditors into abandoning any attempts at collecting the Plaintiffs' debt due to the appearance of a valid dispute as to the validity of the debt, and that the Defendants' disputes to the credit reporting bureaus were also attempts to remove valid reporting entries by the Plaintiffs' creditors in an attempt to declare a valid debt invalid through the credit reporting dispute process. *Id.* at 9.

**B.     Procedural History**

On August 16, 2024, the Plaintiffs filed their Complaint. Compl.

On November 11, 2024, the Defendants filed a motion to dismiss the Complaint, Mot., and an accompanying memorandum of law in support of their motion to dismiss. Mem. of L. in

Support of the Defs. Consumer Legal Group, P.C. and Aryeh Weber's Mot. to Dismiss Compl. and to Stay Discovery, ECF No. 24-1 ("Mem.").

On December 2, 2024, the Plaintiffs filed an opposition to the Defendants' motion to dismiss and stay. Pls.' Opp. to Defs.' Mot. to Dismiss and Stay, ECF No. 30 ("Opp'n").

On December 16, 2024, the Defendants filed a reply memorandum in further support of the Defendants' motion to dismiss the Complaint and stay discovery. Reply Mem. of L. in Further Supp. of Defs. Consumer Legal Group, P.C. and Aryeh Weber's Mot. to Dismiss Compl. and to Stay Discovery, ECF No. 31 ("Reply").

On January 3, 2025, the Court granted the Defendants' motion to stay discovery until the resolution of the motion to dismiss. Order, ECF No. 32.

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at

679. Thus, the complaint must contain "factual amplification ... to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III.  DISCUSSION

The Plaintiffs seek damages for claims of (1) making untrue statements regarding the Plaintiffs' credit and charging for debt validation services before performance in violation of the Credit Repair Organizations Act ("CROA"), 15 U.S.C. §§ 1679 *et seq*.; and (2) damaging the Plaintiffs' credit score and causing the Plaintiffs' creditors to file multiple debt collection

lawsuits against the Plaintiffs. Compl. at 9–12.

The Court will address each of these claims in turn.

### A. The Credit Repair Organizations Act ("CROA") Claims

Enacted to protect consumers who "may seek assistance from credit repair organizations which offer to help improve the credit standing of such consumers," 15 U.S.C. § 1679, the CROA defines a "credit repair organization" as a person or entity using the instrumentalities of interstate commerce to "sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of ... improving any consumer's credit record, credit history, or credit rating" or providing related "advice or assistance." *Id.* § 1679a(3)(A). Expressly excluded from the definition is "any creditor ... with respect to any consumer, to the extent the creditor is assisting the consumer to restructure any debt owed by the consumer to the creditor." *Id.* § 1679a(3)(B)(ii).

Section 1679g of the CROA authorizes private civil actions against persons who violate the CROA. *See id.* § 1679g ("Any person who fails to comply with any provision of this subchapter with respect to any other person shall be liable to such person . . . .").

Section 1679b(a)(3) states that "[n]o person may—make or use any untrue or misleading representation of the services of the credit repair organization[,]" *id.* § 1679b(a)(3), while section 1697b(b) states that "[n]o credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed," *id.* § 1679b(b).

"[L]iability under CROA is limited to credit repair organizations . . . and persons who are not credit repair organizations but commit actions enumerated in § 1679b(a)(1) in connection

6

with the activities of, or transactions involving a credit repair organization." *Hernandez v. Saybrook Buick GMC, Inc.*, 505 F. Supp. 3d 93, 108 (D. Conn. 2020) (citing *In re Wright*, No. 05-40829JJR13, 2007 WL 1459475, at *7 (Bankr. N.D. Ala. May 16, 2007)).[3]

The Defendants argue that (1) they are not Credit Repair Organizations ("CROs") subject to the CROA as the Plaintiffs "do not cite to any facts in support of this conclusion [that the Defendants are CROs] other than the conclusion itself", the language of the Services Agreement indicated that CLG did not perform credit repair, and CLG does not fit within the statutory definition of a CROA, Mem. at 13–17;[4] (2) even if the Defendants were CROs, the Plaintiffs' section 1679b(a)(3) would fail because "communications with creditors and credit bureaus are not governed by § 1679b(a)(3) . . . because they do not pertain to the 'services of the credit repair organization,'" *id.* at 18, and the Defendants never promised to remove all of the Plaintiffs' debt from their credit report and the Plaintiffs' do not have adequate proof that they did, *id.* at 21–22; and (3) even if the Defendants were CROs, the Plaintiffs' section 1679b(b) claim would also fail because "courts have repeatedly held that collecting payments while working is being performed is permissible under CROA." *Id.* at 23.

In response, the Plaintiffs argue that (1) "[i]t seems indisputable, to be confirmed by discovery, that Defendants are a CRO," Opp'n at 7, as the "Plaintiffs paid Defendants for credit repair, and not only did Defendants perform credit repair services, they accepted payment prior

---

[3] As acknowledged in *Hernandez*, this Court is still not aware of any Second Circuit or Supreme Court precedent on whether or not section 1679b(a) or the CROA as a whole applies only to credit repair organizations. *See Hernandez*, 505 F. Supp. 3d at 106–108. But this Court continues to agree with its analysis undertaken in *Hernandez* that "liability under CROA is limited to credit repair organizations . . . and persons who are not credit repair organizations but commit actions enumerated in § 1679b(a)(1) in connection with the activities of, or transactions involving a credit repair organization." *Hernandez v. Saybrook Buick GMC, Inc.*, 505 F. Supp. 3d 93, 108 (D. Conn. 2020) (internal quotation marks omitted) (citing *In re Wright*, No. 05-40829JJR13, 2007 WL 1459475, at *7 (Bankr. N.D. Ala. May 16, 2007)).

[4] Where a document's internal page numbers conflict with the ECF-generated pagination, the Court refers to the ECF-generated pagination.

7

to performing their attempts at credit repair," *id.* at 9; (2) there was not specific disclaimer that they did not promise to remove all of the Plaintiffs' debt from her credit report, Opp'n at 10.

In reply, the Defendants argue that (1) "violative conduct [under the CROA] must involve a CRO," Reply at 11, but the Plaintiffs are "unable to point to anything that outright or impliedly promises credit repair or improvement," *id.* at 12, and the "Plaintiffs cannot file a bare-bones complaint in violation of pleading standards and hope to find a factual basis for the complaint in discovery," *id.* at 10; (2) the Plaintiffs "do not oppose the dismissal of Plaintiffs' Count I claim for a purported violation of 15 U.S.C. § 1679b(a)(3)," *id.* at 6, and their claim fails because "§ 1679b(a)(3) applies to representations made to the consumer, not third parties, and certainly not communications that have nothing to do with the services of the CRO," *id.*; and (3) charging for work done in June and July before sending out cease and desist letters is permissible under the CROA and thus the § 1679b(b) claim should also be dismissed. *Id.* at 8–9.

The Court agrees.

In their Complaint, the Plaintiffs allege that the Defendants are CROs by merely stating that they meet the statutory definition of CROs under the CROA. *See* Compl. at 10 ("Each of the Defendants is a 'credit repair organization' within the definition of CROA, as each Defendant is: . . . [citing the definition of a CRO as defined at 15 U.S.C. § 1679a(3)(A)]."). Such conclusory allegations and statutory recitations are not enough for a claim to survive a motion to dismiss. *See Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." (internal citation and quotation marks omitted)).

8

Despite this, the Defendants can still classify as CROs, if the Plaintiffs have plead enough facts to prove that the Defendants made "implied [or] express representations of 'improving any consumer's credit record, credit history, or credit rating;' or 'providing advice or assistance to any consumer with regard to' improving their credit record, credit history or credit rating," *Cortese v. Edge Sols., Inc.*, No. CIVA040956DRHARL, 2007 WL 2782750, at *6 (E.D.N.Y. Sept. 24, 2007) (quoting 15 U.S.C. § 1679a(3) (stating the definition of a CRO under the CROA)), or at least that the Defendants made "representations . . . that they would re-establish their client's spotty credit report . . . ." *Id.* at *7 (citing *Limpert v. Cambridge Credit Counseling Corporation*, 328 F. Supp. 2d 360, 364–65 (E.D.N.Y. 2004)).

Nowhere in their Complaint, however, do the Plaintiffs properly allege that the Defendants made any representations that they would assist in improving their credit—the allegations only represent that the Defendants promised to help with the Plaintiffs' debt. *See Complaint* at 4 ("Plaintiff Senderovic called a debt relief company . . . the debt relief company pitched this 'new' debt validation program that [the Defendants] offered . . . ."); *id.* at 5 (citing the Services Agreement at 1) (describing how the Defendants will help the Plaintiffs with various actions related to their debt); *id.* at 6–8 (showing letters sent by the Defendants to the Plaintiffs' creditors describing that they are "exploring all options to resolve [their] client's debts," and to provide information about their debts).

No where in the Services Agreement do the Defendants represent that they would re-establish the Plaintiffs' credit or advise or assist the Plaintiffs with their credit in any way—in fact the agreement states the opposite.[5] *See* Services Agreement at 2 ("CLG will obtain your

---

[5] The Services Agreement is incorporated by reference in the Complaint. *See* Compl. at 5 (quoting the Services Agreement); *Brass*, 987 F.2d at 150 ("When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters

credit reports, analyze them, and develop strategies for correcting invalid or unlawful debts for which you should not be held legally responsible. Again, it is expressly understood and agreed that CLG is not a credit repair organization, is not engaged in credit repair, and will not be undertaking any work as to Your credit repair, even though CLG's work services towards resolving debt may have an effect and impact on Your credit.").

Engaging in debt validation services, like the Defendants did here, does not make them CROs under the CROA, when they did not make any representations about engaging in credit repair services—despite the potential impact of those services on the Plaintiffs' credit or the Plaintiffs' intention when engaging with the Defendants. *See, e.g.*, *Carrington v. Experian Holdings, Inc.*, 469 F. Supp. 3d 891, 901 (W.D. Wis. 2020) ("In his surreply brief, Carrington relies heavily on *Helms v. Consumerinfo.com, Inc.*, 436 F. Supp. 2d 1220 (N.D. Ala. 2005), in which the court held that Consumer Services was a credit repair organization. But the court in *Helms* relied on advertisements from that time in which Consumer Services marketed credit repair services and then charged money for them."); *Payton v. Nationwide Debt Direct*, No. 1:15-CV-742, 2016 WL 3058010, at *3 (S.D. Ohio May 31, 2016) ("'Whether a company is a credit repair organization under the CROA depends on the representations made. . . . Nationwide's solicitation letter attached as an exhibit to the Class Action Complaint does not contain representations that its debt settlement services could improve a person's credit record, credit history, or credit rating. Instead, the solicitation letter identifies different financial benefits of debt settlement including debt reduction, interest payment savings, and avoidance of bankruptcy.'" (citations and internal quotation marks omitted)).

---

of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.").

Because the Complaint does not allege any representations made by the Defendants related to credit repair, the Defendants do not qualify as CROs under the CROA and thus, are not liable under the CROA. *See Hernandez*, 505 F. Supp. 3d at 108 ("[L]iability under CROA is limited to credit repair organizations . . . and persons who are not credit repair organizations but commit actions enumerated in § 1679b(a)(1) in connection with the activities of, or transactions involving a credit repair organization.").

Accordingly, Count One of the Complaint will be dismissed.

### B. The Damage to Credit Claim

Count Two of the Plaintiff's' Complaint contains just two sentences of allegations of harm caused by the Defendants: "The sending of these dispute letters attempting to invalidate legitimately owed debts and informing Plaintiffs to stop paying all of their creditors caused significant damage to Plaintiffs' credit score and caused Plaintiffs' creditors to file multiple debt collection lawsuits against Plaintiffs. Plaintiffs have suffered significate damages thereby, seeing a precipitous decline in Plaintiffs' credit score, to the point that neither Plaintiff has the ability to apply for any credit." Compl. at 12.

The Defendants argue that "Count II should be dismissed because it fails to allege any actionable legal claims or violations." Mem. at 24.

The Plaintiffs do not present any arguments in opposition.

In reply the Defendants argue that the "Plaintiff's failure to oppose Defendants' dismissal arguments of . . . Count II warrants dismissal of the claim[] as abandoned." Reply at 7.

The Court agrees.

Neither sentence relating to this claim provides a legal basis on which relief can be granted. At the motion to dismiss stage, "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions," *Twombly*, 550 U.S. at 555. Conclusory allegations of harm without a legal basis for relief does not constitute a properly stated claims, and thus Count Two of the Complaint must be dismissed. *See, e.g.*, *Murawski v. New York State Bd. of Elections*, 285 F. Supp. 3d 691, 698 (S.D.N.Y. 2018) ("Again, the Plaintiff has not proffered a cognizant legal theory on which this relief may be granted, accordingly, it is dismissed.").

Moreover, because the Plaintiffs do not address or oppose the motion to dismiss this damage to credit claim in their opposition papers, the Court deems this claim to have been abandoned. *See Lami v. Stahl*, No. 3:05-CV-1416 (MRK), 2007 WL 3124834, at *1 (D. Conn. Oct. 25, 2007) ("It is well settled that a failure to brief an issue is grounds to deem the claim abandoned.") (citing *Ansell v. D'Alesio*, 485 F.Supp.2d 80, 86 (D. Conn. 2007)) (citing *Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006) ("On appeal, Schaefer did not brief, and thus has waived, his unjust enrichment claim.")); *see also Wilkov v. Ameriprise Fin. Servs., Inc.*, 753 F. App'x 44, 47 n.1 (2d Cir. 2018) ("We affirm the District Court's dismissal of those claims on the ground that they were 'abandoned' by Wilkov when she failed to oppose them in her opposition to Ameriprise's motion to dismiss.").

## IV.   CONCLUSION

For the foregoing reasons, the Complaint is **DISMISSED**, and Defendants' motion to dismiss is **GRANTED**.

Because the Complaint has been dismissed, the Plaintiffs' request for the certification of a class of similarly situated Plaintiffs is **DENIED** as moot.[6]

---

[6] *See* Compl. at 12 ("Plaintiffs seek to have this Court certify the following class: . . ."); *see also Byrd v. Goord*, No. 00 CV 2135 (GBD), 2007 WL 2789505, at *4 (S.D.N.Y. Sept. 26, 2007) ("Accordingly, defendants' motion to dismiss the amended complaint is granted. Plaintiffs' motion for class certification is denied as moot."); *Richards v. Direct Energy Servs.*, LLC, 246 F. Supp. 3d 538, 560 (D. Conn. 2017) ("Defendants' Motion for Summary

To the extent that the deficiencies in Plaintiff's Complaint can be remedied, Plaintiff may seek leave to file an Amended Complaint by **July 18, 2025**.

**SO ORDERED** at New Haven, Connecticut, this 13th day of June, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

Judgment is GRANTED. Accordingly, Mr. Richards's motion for class certification is denied as moot."), *aff'd*, 915 F.3d 88 (2d Cir. 2019).